**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**JANE DOE,**

      **Plaintiff,**

  v.

**OHIO UNIVERSITY,** *et al.***,**

      **Defendants.**

Case No. 2:21-cv-858
**JUDGE EDMUND A. SARGUS, JR.
Magistrate Judge Elizabeth P. Deavers**

**OPINION AND ORDER**

This matter is before the Court on Defendants Ohio University, Ohio University Board of Trustees, T. Dane Bennett, Taylor J. Tackett and Jason Pina's (collectively, "Defendants") Motion to Dismiss (ECF No. 23, hereafter "Defs.' Mot."). Plaintiff filed a Response in Opposition (ECF No. 30, hereafter "Pl.'s Resp.") and Defendants replied (ECF No. 31, hereafter "Defs.' Reply"). For the following reasons, Defendants' motion is **GRANTED in part and DENIED in part**.

**I.    BACKGROUND**

Plaintiff, a graduate of Ohio University (the "University"), brings this action against the University and its employees for allegedly mishandling Plaintiff's sexual assault report. Plaintiff avers that the University's inactions subjected her to a hostile educational environment and peer harassment. She also claims that the University's investigation process was unfair and favored her attacker over her because of her gender. (Am. Compl. ¶ 21.)

According to the Complaint, Plaintiff attended a house party on February 23, 2019. Plaintiff became intoxicated to the point where she vomited multiple times, was unable to talk or walk without assistance, and lost consciousness in various places in the house. While she was in

1

this state, Plaintiff alleges that numerous students took photos of her. One student, John Smith, posted two photos of her in this state on social media. (*Id.* ¶¶ 2, 48–56.)

According to Plaintiff, she woke up in an armchair to Smith kissing her. She was unable to stop his advances and fell in and out of consciousness. Plaintiff then woke up in Smith's bed where he was having sexual intercourse with her. She was still unable to leave or speak. When she finally told Smith that she wanted to go home, he ignored her and continued having intercourse with her. (*Id.* ¶¶ 57–68.)

### A. Plaintiff Reports the Assault

Plaintiff received a rape examination at a hospital the next day, on February 24, 2019. A few days later, she reported the incident to the University's Title IX office and submitted a Sexual Misconduct, Relationship Violence, and Stalking Incident Report to the University. (*Id.* ¶¶ 74–77.) Plaintiff also lodged a formal criminal complaint with the local police department. (*Id.* ¶ 80.)

### B. The University Initiates an Investigation

Following her report, the University contacted Plaintiff and scheduled an interview with her. (*Id.* ¶ 81.) On or about March 5, 2019, Plaintiff met with the two Investigators assigned to her case to discuss the University's investigative process. (*Id.* ¶ 105.) Plaintiff was advised of her right have an advisor and to attend a hearing regarding the Complaint. (*Id.* ¶ 106.) The University also issued a No Contact Directive which barred both direct and indirect contact between Plaintiff and Smith. (*Id.* ¶ 110.)

The University provided Plaintiff with a Process Advisor. Plaintiff alleges that he was very inexperienced, and there was no apparent evidence that he had received any formal training in the Title IX, investigation, or adjudication processes. (*Id.* ¶¶ 108–09.)

The University began interviewing witnesses on April 1, 2019. (*Id.* ¶¶ 112–17.) Many of the witnesses confirmed that Plaintiff "had blacked out," "face planted on the floor," "was like a zombie," "could not walk properly," was vomiting in the toilet and hit her head on the toilet, and "could not walk or talk." (*Id.* ¶ 118.) The witnesses submitted videos and photos of Plaintiff on the night in question. (*Id.* ¶¶ 119–22.) One witness told investigators that Smith, the attacker, was "the most sober" she had ever seen him. (*Id.* ¶ 118a.) Another witness submitted a text message from Smith wherein he stated that he was "a piece of shit for this one" and admitted that he hooked up with Plaintiff and was "99 percent sure she was completely gone." (*Id.* ¶ 126.) The University interviewed Smith on May 1, 2019. (*Id.* ¶ 123.)

**C. Peer Harassment**

During the investigation, Plaintiff attended several classes with Smith's friends. (*Id.* ¶ 131.) They called her a liar, spread rumors about her, and accused her of filing a complaint against Smith, who is African American, because she is racist. (*Id.* ¶ 133.) In one classroom group, some of Smith's friends harassed her by calling her names. (*Id.* ¶¶ 134–38.) The students taunted Plaintiff by physically poking and prodding her to get her attention only to call her a liar and a racist again for her complaint against Smith. (*Id.* ¶ 139.) A few of Plaintiff's classmates witnessed the harassment and asked her professor to step in and stop it. (*Id.* ¶ 147.)

Plaintiff suffered extreme stress and anxiety because of the harassment. (*Id.* ¶ 139.) She missed classes out of fear of experiencing further harassment. She had trouble sleeping and lost weight. As a result of these conditions, Plaintiff suffered a hernia and underwent an emergency surgery. (*Id.* ¶ 141.)

### D. Plaintiff Reports Peer Harassment

Plaintiff reported the harassment to the University. (*Id.* ¶ 145.) In response, the University allegedly told her that it supported her efforts to fix the problem herself but took no steps to investigate the ongoing harassment. (*Id.* ¶¶ 152–53.) The University allegedly refused to investigate her complaint or talk to any students in Plaintiff's classes, unless and until Plaintiff specifically pinpointed each person and instance of harassment. (*Id.* ¶ 159.) Two investigators told her that, in the meantime, there was "not much" the University could do. (*Id.* ¶ 151.)

When Plaintiff told one professor that she had missed class because of peer harassment, the trauma of her assault, and the feeling that the classroom was no longer a safe environment, the professor allegedly responded that she was not surprised that the students in class were acting "less than mature" but assured Plaintiff that "eventually you will get stronger and be able to deal with these scenarios." (*Id.* ¶ 150.) The professor allegedly advised Plaintiff that the best solution was for Plaintiff to stop attending class and Plaintiff should learn the material on her own. (*Id.* ¶ 154.)

After Plaintiff stopped going to classes, Smith's friends created a social media group dedicated to posting photos of Plaintiff whenever she was on campus. (*Id.* ¶ 143.) She continued to suffer physically and mentally. As a result of her rapid weight loss and depression, Smith's friends allegedly spread rumors that she had cancer. (*Id.* ¶ 144.)

### E. The University Finds Smith Responsible

Following the investigation, the University released an investigative report and convened a Hearing Panel, consisting of Defendants Tackett and Bennett, to adjudicate Plaintiff's Complaint. (*Id.* ¶¶ 166, 170–71.) Plaintiff alleges that she was treated less favorably than Smith throughout the proceeding. The Panel permitted Smith to scream at Plaintiff several different times. Plaintiff excused herself from the hearing due to emotional distress several times. The Panel refused to

continue the hearing without Plaintiff present, even though she had been told that the hearing could have occurred without her. (*Id.* ¶¶ 172–77.) On July 8, 2019, the Panel issued an outcome letter finding Smith responsible for non-consensual sexual intercourse and non-consensual sexual contact. The Panel recommended Smith's immediate expulsion. (*Id.* ¶¶ 178–80.)

### F. The University Grants Smith's Appeal and Overturns the Initial Determination

Smith was permitted five business days to appeal the determination. The bases for appeal were limited to: (i) inappropriate sanction; (ii) procedural defect in the original hearing; and (iii) presence of new evidence that was not available at the time of the hearing.

Smith filed an appeal on July 15, 2019 contending that there was a procedural defect in the original investigation or hearing. (*Id.* ¶¶ 183–90.) According to Plaintiff, Smith did not actually allege a procedural defect in his appeal and instead disagreed with the Panel's interpretation of the evidence submitted, particularly the text message he sent about his knowledge of Plaintiff's incapacitation. Nonetheless, Vice President of Student Affairs Pina allowed the appeal to proceed. (*Id.* ¶ 196.) Pina ordered that a re-hearing take place on the issue of Smith's knowledge of Plaintiff's incapacitation on the night in question. (*Id.* ¶ 197.)

The Panel held a limited re-hearing on September 6, 2019. (*Id.* ¶ 200.) Plaintiff alleges that Smith did not present new evidence at the hearing. (*Id.* ¶ 201.) Following the hearing, Plaintiff continued to experience harassment from other students. Students approached her on campus and said, "aren't you that girl who was raped and is a total mess now?" Her grades and mental health suffered. Plaintiff and her father again complained to the University, but it allegedly did not act in response. (*Id.* ¶¶ 203–11.)

On September 17, 2019, the Panel reversed its initial determination and found Smith not responsible for any policy violations because he did not know that Plaintiff was incapacitated at

5

the time of the incident. (*Id.* ¶¶ 212–13.) Smith was permitted to continue attending the University. (*Id.* ¶ 217.)

### G. The University Denies Plaintiff's Appeal

Plaintiff was given the same option for appeal. Defendant Tackett, one Panel member, told Plaintiff that without new evidence, the University would not entertain any appeal by her or review the evidence again. (*Id.* ¶¶ 222–24.) Plaintiff submitted an appeal contending that the Hearing Panel abused its authority in rendering its conclusions. (*Id.* ¶ 227.) Vice President Pina denied Plaintiff's appeal. (*Id.* ¶ 229.)

### H. Plaintiff Suffers Additional Harassment

Plaintiff and Smith returned to campus for the 2020 Fall semester. (*Id.* ¶ 230.) Plaintiff regularly saw Smith on campus, which triggered her depression. (*Id.* ¶ 233.) Smith had been indicted on criminal charges for rape and was subject to a protective order requiring him to stay away from Plaintiff. (*Id.* ¶ 234.) Plaintiff avers that Smith routinely violated the protective order to the point that both Plaintiff and the prosecutor spoke to the University to ask the University to step in and help protect Plaintiff. (*Id.* ¶ 235.) The University allegedly did nothing. (*Id.*)

On one occasion, Smith walked up to Plaintiff while at a bar. After Plaintiff reported this incident to the prosecutor and the University. Again, the University did not act. The prosecutor then acted and secured a warrant for Smith's arrest on the basis that he had violated his bond and the protective order. Smith was arrested. (*Id.* ¶¶ 236–38.)

On or about July 21, 2020, Smith pled guilty to a charge of Sexual Battery against Plaintiff. He is currently serving a three-year prison sentence. (*Id.* ¶¶ 240–42.)

Plaintiff alleges that the University's actions and inaction led to further bullying and harassment from other students. Smith's friends continued to call her names, spread rumors, and

openly tell her "even the school knows you're full of shit." (*Id.* ¶ 239.) She became severely depressed and still suffers from depression today. (*Id.* ¶¶ 245–47.) Plaintiff alleges that her physical and mental ailments caused her to fall behind in her schoolwork, resulting in her delayed graduation and start of her career. (*Id.* ¶ 248.)

## I. Procedural History

Plaintiff filed this action in federal court on February 26, 2021 against Ohio University, Ohio University Board of Trustees, Assistant Dean of Students and Director for Community Standards Taylor J. Tackett, Assistant Director of Community Standards and Student Responsibility T. Dane Bennett, and Vice President for Student Affairs Jason Pina. Defendants Tackett and Bennett were co-hearing officers who presided over the initial hearing involving Doe and Smith and the subsequent rehearing after the first appeal. Defendant Pina granted Smith's appeal after the first hearing and denied Plaintiff's appeal after the second hearing.

Plaintiff asserts violations of Title IX of the Educational Amendments of 1972, 20 U.S.C. § 1681, *et seq.* ("Title IX"), and the Equal Protection Clause and Due Process Clause of the Fourteenth Amendment to the United States Constitution under to 42 U.S.C. § 1983. (*See generally* Am. Compl.) Defendants filed the instant motion to dismiss on June 16, 2021. (ECF No. 23.) The motion is ripe for review.

## II. STANDARD

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 677–78 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

In determining this, a court must "construe the complaint in the light most favorable to the plaintiff." *Inge v. Rock Fin., Corp.*, 281 F.3d 613, 619 (6th Cir. 2007). Furthermore, "[a]lthough for purposes of a motion to dismiss [a court] must take all the factual allegations in the complaint as true, [it][is] not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* at 677–79 (quoting *Twombly*, 550 U.S. at 556) (internal quotations omitted).

### III. ANALYSIS

In her Response in Opposition, Plaintiff voluntarily withdrew her procedural due process claims (Count III) and substantive due process claims (Count IV) against all defendants. Plaintiff also withdrew her equal protection claim (Count V) against the University. (*See* Pl.'s Resp. at 13 n. 3, 4.) She proceeds with her Title IX deliberate indifference and hostile environment claims against the University, and equal protection claims against Defendants Bennett, Tackett, and Pina.

#### A. **Title IX: Deliberate Indifference (Count I)**

Title IX of the Education Amendments of 1972 is a federal statute designed to prevent sexual discrimination and harassment in educational institutions that receive federal funding. "Title IX provides that '[n]o person…shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance.'" *Williams ex rel. Hart v. Paint Valley Loc. Sch. Dist.*, 400 F.3d 360, 366 (6th Cir. 2005) (quoting 20 U.S.C. § 1681(a)).

To survive a motion to dismiss, a student-victim plaintiff must plead, "an incident of actionable sexual harassment, the school's actual knowledge of it, some further incident of actionable sexual harassment, that the further actionable harassment would not have happened but for the objective unreasonableness (deliberate indifference) of the school's response, and that the

8

Title IX injury is attributable to the post-actual-knowledge further harassment." *Kollaritsch v. Michigan State Univ. Bd. of Tr.*, 944 F.3d 613, 624–25 (6th Cir. 2019).

Defendants move to dismiss Plaintiff's claim for deliberate indifference under Title IX on that grounds that there are insufficient allegations of actionable harassment, actual knowledge, and deliberate indifference. (Defs.' Mot. at 4.)

**1. Actionable Harassment**

Defendants first argue that Plaintiff fails to plead "actionable harassment" because her subjective feelings about feeling unsafe and encountering Smith do not rise to the level of actionable harassment. (Defs.' Mot. at 6.) Plaintiff responds that she sufficiently pled actionable harassment. The Amended Complaint alleges she that was repeatedly harassed, bullied, and subject to degrading comments and accusations of being a liar, a "fake rape victim," and a racist as a result of her Title IX Complaint. Plaintiff also alleged that she was physically poked and prodded by students who insulted her because of her status as a survivor of sexual assault. Plaintiff has further alleged that the harassment was so open and notorious that several of her classmates inquired about it and complained on Plaintiff's behalf to a professor.

The Court agrees with Plaintiff and finds that she sufficiently pled actionable harassment. Her allegations portray "aggressive and antagonistic behavior" by Smith's friends that was "uninvited, unwanted, and non-consensual." *See Kollaritsch*, 944 F.3d at 620. In *Kollaritsch*, the Court found the plaintiff's allegations that there were nine encounters of "stalking, harassing, and intimidating" insufficient and too general to establish actionable harassment. *Kollaritsch*, 944 F.3d at 620. Here, in contrast, Plaintiff alleges the details of her harassment including the names students called her, the poking and prodding acts, and the frequency and locations of harassment. The harassment was "pervasive" because it lasted for months during and after the University's

9

investigation, and it was "objectively offensive" to call Plaintiff a "fake rape victim" and falsely accuse her of being a racist for filing a sexual assault complaint. *See Doe v. Univ. of Kentucky*, 959 F.3d 246, 250 (6th Cir. 2020).

### 2. Actual Knowledge

Defendants argue that the University did not have actual knowledge of the harassment because Plaintiff did not or could not identify the harassers for the University. (Defs.' Mot. at 7.) "Actual knowledge requires only that a single school administrator with authority to take corrective action had actual knowledge of the sexual harassment." *Stiles ex rel. D.S. v. Grainger Cty.*, 819 F.3d 834, 848 (6th Cir. 2016). Plaintiff easily meets this burden.

The Amended Complaint alleges that Plaintiff and her father complained of the ongoing harassment to her professor who oversaw the class where the harassment took place, and the University's appointed Title IX investigators and Title IX Coordinator. (Pl.'s Resp. at 11.) Defendants do not dispute that they knew about and received these reports but contend that, because Plaintiff did not give them the names of her harassers, they did not have actual knowledge of the harassment. The standard does not require the University to know every detail of the harassment, simply that such harassment is occurring. Thus, Plaintiff adequately alleges that the University had actual knowledge that she experienced sexual harassment.

### 3. Deliberate Indifference

Turning to the final prong, the University is liable if it acted with "deliberate indifference." An institution is deliberately indifferent to harassment if it reacts in a way that is "clearly unreasonable in light of what it knew." *Kesterson v. Kent State Univ.*, 967 F.3d 519, 529 (6th Cir. 2020). The deliberate indifference must, "at a minimum, cause students to undergo harassment or make them liable or vulnerable" or "subjected" to it. *Davis v. Monroe Cty. Bd. of Educ.*, 526 U.S.

629, 643–44 (1999). However, the institution need not "remedy" the harassment, *Id.* at 648, or "engage in a particular disciplinary action." *Patterson v. Hudson Area Schs.*, 551 F.3d 438, 446 (6th Cir. 2009). It is only liable if its efforts amounted to "an official decision…not to remedy the violation." *Davis,* 526 U.S. at 642.

Defendants argue that the University was not deliberately indifferent to Plaintiff's harassment because it took steps to address the situation such as removing Plaintiff from the class in which she faced harassment. Defendants also contend that the University could not take further actions because Plaintiff did not tell them the names of the harassers. (Defs.' Mot. at 6.)

When taking the allegations as true, and drawing all reasonable inferences in Plaintiff's favor, the Court finds there are sufficient allegations of deliberate indifference. Plaintiff alleges that even after the school knew she faced harassment in a class, neither the University nor the professor acted to stop it. Plaintiff alleges she was placed in classroom groups with Smith's friends, subject to poking and prodding, name-calling, and other abuses. She alleges that the University did not act even after other students asked the professor to step in. Instead, the professor suggested that the other students were immature and that Plaintiff would learn how to deal with them. When Plaintiff and her father complained to the University several times over the course of months, Plaintiff alleges that the University again did not act. Then, when Smith violated the protective order to stay away from Plaintiff and the prosecutor asked the University to step in, she alleges that it did nothing.

This alleged conduct, when taken as true, is indicative of a pattern of "refusing to take action to bring the [harassers] into compliance." *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290 (1998). While the University is not required to remedy harassment, it is deliberately indifferent for the University to take virtually no action to address harassment where it "exercises

11

substantial control" over the harassers and the context—such as in a classroom setting. *See Foster v. Bd. of Regents of Univ. of Michigan*, 982 F.3d 960, at 970 (6th Cir. 2020) (citing *Davis*, 526 U.S. at 645). Although the Amended Complaint suggests the University was actively investigating the sexual assault, it alleges the University did nothing to prevent the harassment Plaintiff suffered during and after the investigation. The University's single action of removing Plaintiff from the classroom, as alleged, is not enough to save it at this stage of the case.

Moreover, the Court notes that deliberate indifference "does not lend itself well to a determination at the motion to dismiss stage." *Adams v. Ohio Univ.*, 300 F. Supp. 3d 983, 1000 (S.D. Ohio March 12, 2018) (quoting *Hart v. Paint Valley Loc. Sch. Dist.*, No. C2-01-004, 2002 WL 31951264, at *9 (S.D. Ohio Nov. 15, 2002)). In the motion to dismiss context, "[p]laintiffs have not been given an opportunity to conduct full discovery into how the University responded to each instance of previous misconduct." *Adams*, 300 F. Supp. 3d at 1000. Based on her allegations, Plaintiff is entitled the opportunity to conduct discovery and support her claims.

### B. Title IX: Hostile Educational Environment (Count II)

Defendants argue that the Court should read Counts I and II together and dismiss one because Plaintiff argues the same facts under each claim. (Defs.' Reply at 2–3.) The Court declines merge the claims because the Sixth Circuit has stated that "[h]ostile environment [Title IX] claims are distinct from deliberate indifference [Title IX] claims." *Doe v. Univ. of Kentucky*, 959 F.3d 246, 251 n.3 (6th Cir. 2020).

Title IX hostile-environment claims are analogous to a Title VII hostile-environment claims. *Doe v. Miami Univ.*, 882 F.3d 579, 590 (6th Cir. 2018). Under both, a plaintiff "must allege that her educational experience was permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive [so as] to alter the conditions of her educational

environment." *Id.* (internal quotation marks and citations omitted). In a Title IX case, the plaintiff must allege that: (1) she was subjected to sexual harassment or a sexually hostile environment; (2) she provided actual notice of the situation to an "appropriate person," who was, at a minimum, an official of the university with authority to take corrective action; and (3) the university's response to the harassment amounted to "deliberate indifference." *Klemencic v. Ohio State Univ.*, 263 F.3d 504, 510 (6th Cir. 2001).

Defendants argue they are entitled to dismissal because there are no allegations that a University employee subjected Plaintiff to an environment permeated with "discriminatory intimidation, ridicule, and insult." *See Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993). Again, the Court disagrees.

Plaintiff sufficiently alleges that she was subjected to a hostile environment. According to the Complaint, Plaintiff endured daily taunting, physical prodding, name-calling, and other harassment in her classroom and throughout campus. She provided actual notice to University personnel who had power to take corrective actions, including her professor and the University's Title IX coordinator and investigators, but failed to act. She sufficiently pleads that the University's response amount to deliberate indifference. As explained in more detail above, the Amended Complaint alleges that the University took virtually no action in response to Plaintiff's numerous harassment complaints. The allegations, and Defendants' own briefs, indicate that the sole remedy was to recommend that Plaintiff remove herself from the class and attempt to learn by herself outside the classroom. These allegations, when taken as true, sufficiently state a claim of hostile environment under Title IX.

### C. Equal Protection Claim (Count V)

Plaintiff asserts Fourteenth Amendment equal protection claims under §1983 against Defendants Bennett, Tackett, and Pina in their individual capacities for monetary damages and in their official capacities for injunctive and declaratory relief. (Pl.'s Resp. at 15.)[1] The Equal Protection Clause does not provide a private right of action. Individuals who sue state actors for violating their constitutional rights must bring claims under 42 U.S.C. § 1983, *Engquist v. Oregon Dep't of Agric.*, 553 U.S. 591 (2008), and allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and (2) that the defendant deprived plaintiff of this federal right under the color of state law. *Jones v. Duncan*, 840 F.2d 359, 360–61 (6th Cir. 1988).

To establish that Defendants deprived her of her right to equal protection, Plaintiff must allege that they "burden[ed] a fundamental right, target[ed] a suspect class, or intentionally treat[ed] one differently from others similarly situated without any rational basis for the difference." *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 312 (6th Cir. 2005). She must also allege that the Defendants treated her differently when they were operating under the "same set of operative facts." *Doe v. Ohio State Univ.*, 239 F. Supp. 3d 1048, 1083 (S.D. Ohio 2017); *see also Perry v. McGinnis*, 209 F.3d 597, 601 (6th Cir. 2000) (holding that for individuals to be similarly situated there must be "relevant similarity," but there need not be "exact correlation").

Plaintiff alleges that she was treated differently than Smith because Defendants Tackett and Bennett, as the Hearing Panel, (i) refused to accommodate Plaintiff and routinely made

---

[1] Defendants initially challenged Plaintiff's equal protection violation claims on the grounds that the Eleventh Amendment bars suits against state officials in their official capacities for damages. Plaintiff thereafter limited her claims against the individual defendants, who are state officials, in their official capacities for prospective relief and in their individual capacities for monetary damages. *See Cady v. Arenac Cnty.*, 574 F.3d 334, 342–44 (6th Cir. 2009).

scheduling decisions contrary to Plaintiff's availability; (ii) permitted Smith opportunities to directly confront, address and scream at Plaintiff during the hearing; (iii) and forced Plaintiff to remain in the hearing room despite her obvious distress. (Pls.' Resp. at 17; Am. Compl. ¶¶ 172–77.) Plaintiff further alleges that Defendants treated her differently than Smith by:

> "(i) subjecting Plaintiff to a sexual assault and sexual harassment through their policies condoning and/or endorsing a campus rape culture; (ii) failing to provide Plaintiff equal process and appeal rights as compared to her male assailant, Smith; (iii) permitting Smith to further harass Plaintiff on campus without consequence; and (iv) subjecting Plaintiff to a hostile education environment."

(Am. Compl. ¶ 322.)

As Defendants argue, these allegations do not support an equal protection claim because the actions do not rise to the level of a constitutional violation. Plaintiff does not allege that Smith was in the same position that she occupied. There are insufficient allegations that Defendants Tackett and Bennett treated her differently than Smith. That Bennett and Tackett allegedly accommodated Smith's schedule more than the plaintiff's is not a violation of her constitutional rights.

Plaintiff also does not have a viable equal protection claim against Defendant Pina. Plaintiff alleges that Defendant Pina, as the adjudicator of both Plaintiff's and Smith's respective appeals, afforded Smith additional leniency with respect to the acceptable bases for appeal and denied Plaintiff's appeal despite the fact that her justification for the appeal was virtually the same as Smith's. (Pl.'s Resp. at 17; Am. Compl. ¶¶ 227–29.) Plaintiff concedes that the two appeals were based on different grounds with different facts submitted for consideration. Additionally, Pina's decision to grant Smith's appeal and later deny Plaintiff's appeal is not a sufficient basis alone for an equal protection claim. *Kollaritsch*, 944 F.3d at 625–27 (finding that schools are not liable for such discretionary decisions because plaintiffs have no "right to a preferred remedy.").

Having found that the equal protection claims against all Defendants are dismissed, the Court need not address the qualified immunity arguments. Furthermore, without an actionable claim, Plaintiff's request for injunctive or declaratory judgment is dismissed. *See Doe v. Ohio State Univ.*, 239 F. Supp. 3d at 1083.

### III. CONCLUSION

For the foregoing reasons, the Court **GRANTS in part and DENIES in part** Defendants' motion to dismiss (ECF No. 23). Defendants Bennett, Tackett, and Pina are dismissed from the case. Counts III, IV, and V are dismissed; Counts I and II against Defendant Ohio University remain. This case remains open.

**IT IS SO ORDERED.**

**3/28/2022**                                           **s/Edmund A. Sargus, Jr.**
**DATE**                                                       **EDMUND A. SARGUS, JR.**
                                                                            **UNITED STATES DISTRICT JUDGE**