UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**JANE DOE,**

      **Plaintiff,**

  v.                         Case No. 2:21-cv-00858
                               Judge Edmund A. Sargus, Jr.
                               Magistrate Judge Chelsey M. Vascura

**OHIO UNIVERSITY, et al.,**

      **Defendants.**

## OPINION AND ORDER

This matter arises on Defendant Ohio University's Motion for Summary Judgment. (ECF No. 56). Also disposed of in this opinion is Defendants' Motion for Partial Judgment on the Pleadings. (ECF No. 43). For the reasons stated below, Defendant's Motion for Summary Judgment is **DENIED**. Defendant's Motion for Partial Judgment on the Pleadings is **GRANTED** as to the issue of punitive and emotional distress damages under Plaintiff's Title IX claim.

**A. Factual Background**

Plaintiff, a graduate of Ohio University (the "University"), brings this action against the University and its employees for allegedly mishandling Plaintiff's sexual assault report and exhibiting deliberate indifference to known, actionable harassment by her peers. (ECF No. 56, at 2) (ECF No. 21, at 23) (ECF No. 1, at 1–2). Plaintiff maintains the University's inattention to her complaints caused her to be subjected to a hostile educational environment and peer harassment. She also claims that the University's investigation process was unfair and favored her attacker over her because of her gender. (ECF 21, at 1).

As described in her amended complaint, Plaintiff attended a house party on or about February 23, 2019. (ECF No. 21, at 12). According to her amended complaint, Plaintiff became intoxicated to the point where she vomited multiple times, was unable to talk or walk without assistance, and lost consciousness in various places in the house. (*Id*., at 12–13). While she was in this state, Plaintiff alleges that "there were numerous photos taken of her by the party attendees." (*Id*., at 13).

Plaintiff states that the next thing she could recall was waking up in a dark room as "Smith was aggressively kissing her." (*Id*., at 14). She was unable to stop his advances and fell in and out of consciousness. (*Id*.). Plaintiff then woke up in Smith's bed where he was having sexual intercourse with her. (*Id*.). At this point she was still unable to leave or speak. (*Id*.). When she finally told Smith that she wanted to go home, he ignored her and continued having intercourse with her. (*Id*., at 14).

### a. Plaintiff Reports the Assault

Plaintiff received a rape examination at a hospital the next day, on or about February 24, 2019. (ECF No. 21, at 16). Four days later, she reported the incident to the University's Title IX office and submitted a Sexual Misconduct, Relationship Violence, and Stalking Incident Report to the University. (*Id*.) (ECF No. 52, at 20). Plaintiff "also made a formal criminal complaint with the local police department." (ECF No. 21, at 16) (ECF No. 50, at 25)

### b. The University Initiates an Investigation

Upon receiving her report, the University contacted Plaintiff and scheduled an interview. (ECF No. 21, at 16) (ECF No. 55, at 20–21). On or about March 5, 2019, Plaintiff met with the two Investigators assigned to her case to discuss the University's investigative process. (ECF No.

2

21, at 23). The investigators advised Plaintiff of her right to an advisor and to attend a hearing regarding the Complaint. (*Id*.). The University also issued a No Contact Directive which barred both direct and indirect contact between Plaintiff and Smith. (*Id*.)

The University provided Plaintiff with a Process Advisor named Andrew. (*Id*., at 23) (ECF No. 50, at 45). Plaintiff alleges that Andrew was obviously very inexperienced. (ECF No. 21, at 23). Further, Plaintiff avers there was no apparent evidence that Andrew had received any formal training in the Title IX, investigation, or adjudication processes. (*Id*., at 23).

The University began the process of interviewing witnesses on April 1, 2019. (*Id*., at 24). Many of the witnesses confirmed that Plaintiff "had blacked out," "face planted on the floor," "was like a zombie," "could not walk properly," was vomiting in the toilet and hit her head on the toilet, and "could not walk or talk." (*Id*., at 24–25). The witnesses submitted videos and photos of Plaintiff on the night in question. (*Id*., at 25). One witness told investigators that Smith, the attacker, was "the most sober" she had ever seen him. (*Id*.). Another witness submitted a text message from Smith wherein he stated that he was "a piece of shit for this one" and admitted that he hooked up with Plaintiff and was "99 percent sure she was completely gone." (*Id*., at 26). The University interviewed Smith on May 1, 2019. (*Id*.) (ECF No. 53, at 36).

    c. **Peer Harassment**

During the investigation, Plaintiff attended several classes with Smith's friends. (ECF No. 21., at 27). They called her a liar, spread rumors about her, and accused her of filing a complaint against Smith, who is African American, because she is racist. (*Id*.) (ECF No. 59, Exhibit 1, at 47, 48, 50–51). In one classroom group, some of Smith's friends harassed her by

3

calling her names. (*Id*.). The students taunted Plaintiff by physically poking and prodding her to get her attention only to call her a liar and a racist again for her complaint against Smith. (*Id*., at 27) (ECF No. 50, at 11, 47). A few of Plaintiff's classmates witnessed the harassment and asked her professor to step in and stop it. (ECF No. 21, at 29). Plaintiff suffered extreme stress and anxiety because of the harassment. (*Id*.) (ECF No. 50, at 15). She missed classes out of fear of experiencing further harassment. She had trouble sleeping and lost weight. As a result of these conditions, Plaintiff suffered a hernia and underwent an emergency surgery. (*Id*., at 28).

### d. Plaintiff Reports Peer Harassment

Plaintiff reported the harassment to the University. (*Id*., at 29) (ECF No. 52, Page 20). In response, the University allegedly told her that it supported her efforts to fix the problem herself but took no steps to investigate the ongoing harassment. (*Id*., at 30). The University allegedly refused to investigate her complaint or talk to any students in Plaintiff's classes, unless and until Plaintiff specifically pinpointed each person and instance of harassment. (*Id*.). Two investigators told her that, in the meantime, there was "not much" the University could do. (*Id*.) (ECF No. 50, at 26). When Plaintiff told one professor that she had missed class because of peer harassment, the trauma of her assault, and the feeling that the classroom was no longer a safe environment, the professor allegedly responded that she was not surprised that the students in class were acting "less than mature" but assured Plaintiff that "eventually you will get stronger and be able to deal with these scenarios." (*Id*., at 29). The professor allegedly advised Plaintiff that the best solution was for Plaintiff to stop attending class and Plaintiff should learn the material on her own. (*Id*.). After Plaintiff stopped going to classes, Smith's friends created a social media group dedicated to posting photos of Plaintiff whenever she was on campus. (*Id*., at 28) (ECF No. 50, at 19). She

continued to suffer physically and mentally. As a result of her rapid weight loss and depression, Smith's friends allegedly spread rumors that she had cancer. (ECF No. 21, at 28).

e. **The University Finds Smith Responsible**

Following the investigation, the University released an investigative report and convened a Hearing Panel, consisting of Defendants Tackett and Bennett, to adjudicate Plaintiff's Complaint. (ECF No. 21, at 31–32) (ECF No. 54, at 21–22). Plaintiff alleges that she was treated less favorably than Smith throughout the proceeding. (ECF No. 21, at 32). The Panel permitted Smith to scream at Plaintiff several different times. (*Id.*). Plaintiff excused herself from the hearing due to emotional distress several times. (*Id.*). The Panel refused to continue the hearing without Plaintiff present, even though she had been told that the hearing could have occurred without her. (*Id.*, at 32–33). On July 8, 2019, the Panel issued an outcome letter finding Smith responsible for non-consensual sexual intercourse and non-consensual sexual contact. The Panel recommended Smith's immediate expulsion. (*Id.*, at 33) (ECF No. 53, at 59).

f. **The University Grants Smith's Appeal and Overturns the Initial Determination**

Smith was permitted five business days to appeal the determination. The bases for appeal were limited to: (i) inappropriate sanction; (ii) procedural defect in the original hearing; and (iii) presence of new evidence that was not available at the time of the hearing. (ECF No. 21, at 34). Smith filed an appeal on July 15, 2019 contending that there was a procedural defect in the original investigation or hearing. (*Id.*, at 34) (ECF No. 53, at 60). According to Plaintiff, Smith did not actually allege a procedural defect in his appeal and instead disagreed with the Panel's interpretation of the evidence submitted, particularly the text message he sent about his

knowledge of Plaintiff's incapacitation. (ECF No. 21, at 34). Nonetheless, Vice President of Student Affairs Pina allowed the appeal to proceed. (*Id*., at 35). Pina ordered that a re-hearing take place on the issue of Smith's knowledge of Plaintiff's incapacitation on the night in question. (*Id*.).

The Panel held a limited re-hearing on September 6, 2019. (*Id*., at 36) (ECF No. 53, at 59–60). Plaintiff alleges that Smith did not present new evidence at the hearing. (ECF No. 21, at 35). Following the hearing, Plaintiff continued to experience harassment from other students. Students approached her on campus and said, "aren't you that girl who was raped and is a total mess now?" (*Id*., at 36). Her grades and mental health suffered. Plaintiff and her father again complained to the University, but it allegedly did not act in response. (*Id*., at 36–37).

On September 17, 2019, the Panel reversed its initial determination and found Smith not responsible for any policy violations because he did not know that Plaintiff was incapacitated at the time of the incident. (*Id*., at 37) (ECF No. 53, at 62). Smith was permitted to continue attending the University. (ECF No. 21., 38) (ECF No. 53, at 62).

    **g. The University Denies Plaintiff's Appeal**

Plaintiff was given the same option for appeal. Defendant Tackett, one Panel member, told Plaintiff that without new evidence, the University would not entertain any appeal by her or review the evidence again. (ECF No 21, at 39). Plaintiff submitted an appeal contending that the Hearing Panel abused its authority in rendering its conclusions. (*Id*.). Vice President Pina denied Plaintiff's appeal without any explanation. (*Id*., at 40).

6

### h. Plaintiff Allegedly Suffers Additional Harassment

Plaintiff and Smith returned to campus for the 2020 Fall semester. (ECF No 21, at 40) (ECF No. 51, Page 12). Plaintiff regularly saw Smith on campus, which triggered her depression. (ECF No. 21, at 40) (ECF No. 50, at 41). Smith had been indicted on criminal charges for rape and was subject to a protective order requiring him to stay away from Plaintiff. (ECF No. 21, at 40). Plaintiff avers that Smith routinely violated the protective order to the point that both Plaintiff and the prosecutor spoke to the University to ask the University to step in and help protect Plaintiff. (*Id*.) (ECF No. 50, at 41-42). The University allegedly did nothing. (ECF No. 21, at 40). On one occasion, Smith walked up to Plaintiff while at a bar. (ECF No. 50, at 41-42). Afterward, Plaintiff reported this incident to the prosecutor and the University. (*Id.*) Again, the University did not act. The prosecutor, however, did. The prosecutor secured a warrant for Smith's arrest on the basis that he had violated his bond and the protective order. Smith was arrested. (ECF No. 21, at 41). On or about July 21, 2020, Smith pled guilty to a charge of Sexual Battery against Plaintiff. (*Id.*). He is currently serving a three-year prison sentence. (*Id*.). Plaintiff alleges that the University's actions and inaction led to further bullying and harassment from other students. Smith's friends continued to call her names, spread rumors, and openly tell her "even the school knows you're full of shit." (*Id*.) (ECF No. 50, at 47–48). She became severely depressed and still suffers from depression today. (ECF No. 21, at 42). Plaintiff alleges that her physical and mental ailments caused her to fall behind in her schoolwork, resulting in her delayed graduation and start of her career. (*Id*.).

### B. Procedural Background

Plaintiff filed this action in federal court on February 26, 2021, against Ohio University, Ohio University Board of Trustees, Assistant Dean of Students and Director for Community Standards Taylor J. Tackett, Assistant Director of Community Standards and Student Responsibility T. Dane Bennett, and Vice President for Student Affairs Jason Pina. (ECF No. 1). She alleges "violations of Title IX of the Educational Amendments of 1972, 20 U.S.C. §1681, et seq. ('Title IX') stemming from the University's gross mishandling and willful disregard of Plaintiff's report of sexual assault." (ECF No. 21, at 2–3). Defendants T. Dane Bennett, Ohio University, Ohio University Board of Trustees, Jason Pina, Taylor J Tackett soon after filed a motion to dismiss. (ECF No. 23). The Court granted their motion in part and denied it in part. (ECF No. 32). Defendants Bennett, Tackett, and Pina were dismissed from the case, leaving only Ohio University and its Board of Trustees (hereinafter "University" or "Defendant"). (ECF No. 32, at 16). On June 10, 2022, Defendant filed a motion for partial judgment on the pleadings. (ECF No. 43). Defendant challenged Plaintiff's entitlement to punitive and emotional damages stemming from her Title IX claim. Plaintiff chose not to contest the motion. (ECF No. 45).

On December 13, 2022, Defendant filed this instant motion for summary judgment. (ECF No. 56). Plaintiff responded roughly a year later, on January 10, 2023. (ECF No. 68). Defendant replied on January 24, 2023. (ECF No. 71).

### C. Standard

Summary judgment is appropriate "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P.

8

56(a). The Court may therefore grant a motion for summary judgment if the nonmoving party who has the burden of proof at trial, fails to make a showing sufficient to establish the existence of an element that is essential to that party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Barnhart v. Pickrel, Schaeffer & Ebeling Co.*, 12 F.3d 1382, 1388–89 (6th Cir. 1993). To avoid summary judgment, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *accord Moore v. Philip Morris Cos.*, 8 F.3d 335, 340 (6th Cir. 1993). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In evaluating a motion for summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970); *see Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000) (stating that the court must draw all reasonable inferences in favor of the nonmoving party and must refrain from making credibility determinations or weighing evidence). Furthermore, the existence of a mere scintilla of evidence in support of the nonmoving party's position will not be sufficient; there must be evidence on which the jury reasonably could find for the nonmoving party. *Anderson*, 477 U.S. at 251; *see Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995); *see also Matsushita*, 475 U.S. at 587–88 (finding reliance upon mere allegations, conjecture, or implausible inferences to be insufficient to survive summary judgment). It is with this standard in mind that the instant motion will be decided.

The moving party bears the burden of production first. "The moving party bears the burden of showing the absence of a genuine issue of material fact as to at least one essential

9

element on each of Plaintiff's claims." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). The non-moving party then must present sufficient evidence from which a jury could reasonably find for her. *See Anderson Liberty Lobb y, Inc*., 477 U.S. 242, 249 (1986). The court must determine "whether the evidence presents sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id*. at 251–52.

### D. Analysis

Two of Plaintiff's claims under Title IX against the University survived Defendant's motion to dismiss. Count One, deliberate indifference and Count Two, hostile environment. Defendant maintains that neither count can survive summary judgment. (ECF No. 56, at 1). Their position is that "the material facts are not in dispute and the University is entitled to judgment as a matter of law. (*Id*., at 3). Plaintiff disagrees, contending that "Defendants' motion for summary judgment should be denied in its entirety and this matter should be set down for trial." (ECF No. 68, at 2).

#### a. Threshold Matter: Defendant's Motion for Partial Judgment on the Pleadings

As a part of her requested relief, Plaintiff sought both emotional distress and punitive damages under Title IX against the University. (ECF No. 21, at 58). Defendant, however, challenges Plaintiff's entitlement to such relief. Defendant argues that "punitive and emotional distress damages under Title IX of the Education Amendments of 1972, 20 U.S.C. §1681 ("Title IX")" are not recoverable in light of the Supreme Court's rulings in *Barnes v. Gorman*, 536 U.S. 181 (2002) and *Cummings v. Premier Rehab Keller*, P.L.L.C., 142 S.Ct. 1562 (April 28, 2022). (ECF No. 43, at 1). In *Barnes*, the Court held that punitive damages are not recoverable under

10

Spending Clause legislation, such as Title IX. *Barnes v. Gorman*, 536 U.S. 181, 189 (2002). And in *Cummings*, the Court "applied Barnes to hold that emotional distress damages are also not recoverable under Spending Clause legislation." (ECF No. 43, at 1).

Plaintiff did not respond to Defendant's motion in a timely manner. (ECF No. 44). When Plaintiff did respond, it was to notify the Court that "Plaintiff does not oppose and does not intend to file a response to Defendants' pending Motion for Partial Judgment on the Pleadings to strike those portions of Plaintiff's Prayer for Relief seeking punitive and emotional distress damages." (ECF No. 45, at 1). As such, Defendant's Motion for Partial Judgment on the Pleadings is **GRANTED**. (ECF No. 43).

### b. Title IX: Deliberate Indifference (Count One)

Title IX of the Education Amendments of 1972 is a federal statute designed to prevent sexual discrimination and harassment in educational institutions that receive federal funding. "Title IX provides that '[n]o person…shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance.'" *Williams ex rel. Hart v. Paint Valley Loc. Sch. Dist.*, 400 F.3d 360, 366 (6th Cir. 2005) (quoting 20 U.S.C. § 1681(a)).

At the summary judgment stage, a plaintiff bringing a deliberate indifference action must, at minimum, raise a genuine issue of material fact, that she (i) suffered actionable sexual harassment, (ii) the school had actual knowledge of the harassment, (iii) the deprivation of access to educational opportunities or benefits provided by the school; and (iv) causation, or, in other words, that the school's response to known actionable sexual harassment caused the plaintiff further injury. *Kollaritsch v. Michigan State Univ. Bd. of Trustees*, 944 F.3d 613, 623-24 (6th Cir. 2019); *see also Doe v. Univ. of Kentucky*, 959 F.3d 246, 250 (6th Cir. 2020).

Defendant moves to dismiss Plaintiff's claim for deliberate indifference under Title IX, arguing Plaintiff cannot show "that Plaintiff suffered actionable harassment; the University knew about it and exhibited deliberate indifference; and the University's deliberate indifference denied Plaintiff access to educational opportunities because of her sex." (ECF No. 56, at 12). Plaintiff counters by arguing that she can show a genuine issue of material fact as to all these elements. (ECF No. 68, at 20). The Court finds for Plaintiff.

### i. Actionable Harassment

Under Title IX, actionable harassment is behavior that is "severe, pervasive, and objectively offensive." *Snyder-Hill v. Ohio State Univ.*, 48 F.4th 686, 712 (6th Cir. 2022) (J. Ralph B. Guy dissenting) (quoting *Davis Next Friend LaShonda D. v. Monroe Cty. Bd. of Educ.*, at 651). *See also, Doe v. Univ. of Kentucky*, 959 F.3d at 250. "'Severe' means something more than just juvenile behavior among students, even behavior that is antagonistic, non-consensual, and crass." *Kollaritsch v. Michigan State Univ. Bd. of Trustees*, 944 F.3d 613, 620 (6th Cir. 2019). "'Pervasive' means 'systemic' or 'widespread.'" *Id*. "'Objectively offensive' means behavior that would be offensive to a reasonable person under the circumstances, not merely offensive to the victim, personally or subjectively." *Id*., at 621. Defendant argues the harassment Plaintiff suffered did not reach this standard. "The alleged peer harassment about which Plaintiff complains takes the form of the kind of juvenile behavior found to fall short of Title IX's "high standard." (ECF No. 56, at 12). Defendant justifies this position by contending that "only the inappropriate comment made to Plaintiff by a female student in October of 2019 could conceivably be considered linked to Plaintiff's sex or status as a survivor of sexual assault. There's no evidence that the other incidents brought to the University's attention (the pre-assault

12

poking and the alleged SnapChat about Plaintiff's absences) were related to Plaintiff's gender or her status as a sexual assault survivor." (*Id*.)

Plaintiff argues the record would allow a reasonable juror to find actionable harassment. She points to the following behaviors as evidence of actionable harassment.

"(i) was subjected to repeated comments, accusations, jokes and gossip—such as being called a liar and submitting a "bull***" Title IX complaint against Smith; (ii) was the target of a malicious social media group designed solely to taunt and follow her on campus; (iii) was subjected to comments—made to her and loud enough in the presence of others—that people should avoid her so as not to "catch a case", a reference to Plaintiff's ongoing Title IX and criminal cases against Smith; (iv) experienced unwanted physical touching in class from a male student; (v) was triggered by seeing Smith, which interactions happened on two major occasions and repeatedly in passing; and (vi) was called a "racist" at least twice by fellow students, at least one of which was a known friend of Smith's."

(ECF No. 68, at 16)

Viewing the evidence in the light most favorable to Plaintiff, a juror could conclude that actionable harassment was inflicted upon her. Plaintiff can point to record evidence that she was called a liar (ECF No. 50, at 50), was the target of a social media group (ECF No. 50, at 19), was subject to mean comments (*Id*., at 25), experienced unwanted poking (*Id*., at 28), was triggered by Smith's presence (*Id*., at 24), was called a racist (*Id*., at 47), and that these incidents took place over the course of months. If Plaintiff is to be believed, her harassment was severe, pervasive, and objectively offensive. The Court finds a genuine issue as to whether she was subject to actionable harassment.

This instant case contrasts with that of *Dahmer v. W. Ky. Univ.* There, the plaintiff pointed to run ins with the perpetrator at SGA meetings, a twitter parody account, and "being subjected to unspecified instances of 'gender stigma and some terms being used'" as evidence of actionable harassment. *Dahmer v. W. Kentucky Univ*., 2022 U.S. App. LEXIS 28533, at **10-12 (Oct. 13, 2022). The Court found this evidence "neither specific nor severe enough to constitute

actional sexual harassment." *Id.*, at 10. Here, however, Plaintiff also shown more incidents of harassment and more specificity regarding her allegations. As such, Plaintiff has carried her burden of showing that a reasonable juror could conclude she had been subject to actionable harassment.

### ii. Actual Knowledge

A victim of actionable harassment must show that her school had "actual knowledge of actionable sexual harassment" to prevail on her title IX claim. *Kollaritsch v. Michigan State Univ. Bd. of Trustees*, 944 F.3d 613, 618 (6th Cir. 2019). "Knowledge" means that the defendant school had "actual knowledge" of an incident of actionable sexual harassment that prompted or should have prompted a response. Defendant argues that the school lacked actual knowledge of the harassment Plaintiff suffered. "'Of the alleged harassment that was reported to the University, only the inappropriate comment made to Plaintiff by a female student in October of 2019 could conceivably be considered linked to Plaintiff's sex or status as a survivor of sexual assault." (ECF No. 56, at 12). Plaintiff counters that from the record a reasonable juror could conclude the University had actual knowledge of the harassment visited upon her. (ECF No. 68, at 17).

"Actual knowledge requires only that a single school administrator with authority to take corrective action had actual knowledge of the sexual harassment." *Stiles ex rel. D.S. v. Grainger Cty.*, 819 F.3d 834, 848 (6th Cir. 2016). Plaintiff can meet this burden. As detailed in the amended complaint, and reiterated through deposition testimony, both Plaintiff and her father report complaining about ongoing harassment to her professor. (ECF No. 21, at 30) (ECF No. 50, at 30) (ECF No. 51, at 30). This professor oversaw the class where the harassment took place. Plaintiff and her father also complained of harassment to the University's appointed Title

IX investigators and Title IX Coordinator. (ECF No. 50, at 28, 40) (ECF No. 51, at 8,14). Thus, Plaintiff created a genuine issue of fact as to whether the University had actual knowledge that she experienced sexual harassment.

### iii. Deliberate Indifference

The next prong Plaintiff must prove in her Title IX sexual harassment action is that the university acted with "deliberate indifference" toward the harassment she received. "'[D]eliberate indifference' means that the defendant both knew and consciously disregarded the known risk to the victim. *Kollaritsch v. Michigan State Univ. Bd. of Trustees*, 944 F.3d 613, 621 (6th Cir. 2019); s*ee also Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 410, 117 S. Ct. 1382, 137 L. Ed. 2d 626 (1997). Universities are deliberately indifferent to harassment when they behave in a manner that is "clearly unreasonable in light of what [they] knew." *Kesterson v. Kent State Univ.*, 967 F.3d 519, 529 (6th Cir. 2020). This deliberate indifference must, "at a minimum, cause students to undergo harassment or make them liable or vulnerable" or "subjected" to it. *Davis v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 643–44 (1999). However, the institution need not "remedy" the harassment, *Id*. at 648, or "engage in a particular disciplinary action." *Patterson v. Hudson Area Schs*., 551 F.3d 438, 446 (6th Cir. 2009). Instead, a university is only liable if its efforts amounted to "an official decision…not to remedy the violation." *Davis*, 526 U.S. at 642.

Defendant denies that the University was anything but supportive of Plaintiff. "The University's earnest efforts cannot be painted as deliberate indifference under either standard of lability." (ECF No. 56, at 13). Plaintiff, however, argues that the University took only minimal, and ineffective action to prevent her ongoing harassment. (ECF No. 68, at 18).

15

Here, when taking the allegations as true, and drawing all reasonable inferences in her favor, Plaintiff has carried her burden of showing deliberate indifference. As the Court noted in its March 28 opinion

"Plaintiff alleges that even after the school knew she faced harassment in a class, neither the University nor the professor acted to stop it. Plaintiff alleges she was placed in classroom groups with Smith's friends, subject to poking and prodding, name-calling, and other abuses. She alleges that the University did not act even after other students asked the professor to step in. Instead, the professor suggested that the other students were immature and that Plaintiff would learn how to deal with them. When Plaintiff and her father complained to the University several times over the course of months, Plaintiff alleges that the University again did not act. Then, when Smith violated the protective order to stay away from Plaintiff and the prosecutor asked the University to step in, she alleges that it did nothing."

(ECF No. 32, at 11)

Further, Plaintiff has elicited deposition testimony supporting these allegations. (ECF Nos. 50, 51, 52, 53,54,55). A reasonable juror would find the University "refusing to take action to bring the [harassers] into compliance." *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290 (1998). Such a decision would constitute deliberate indifference where [the University] "exercises substantial control" over the harassers and the context—such as in a classroom setting. *See Foster v. Bd. of Regents of Univ. of Michigan*, 982 F.3d 960, at 970 (6th Cir. 2020) (citing Davis, 526U.S. at 645). Plaintiff has created a genuine issue of material fact that, aside from removing her from her cluster, Defendant took no action to prevent ongoing harassment from her classmates. It is enough that, viewing the evidence in the light most favorable to Plaintiff and making all reasonable inferences on her behalf, a reasonable juror could find for Plaintiff.

### iv. Causation

The last prong in Plaintiff's title IX deliberate indifference claim is that of causation. "'Causation' means the 'Act' caused the "Injury," such that the injury is attributable to the post-

actual-knowledge further harassment, which would not have happened but for the clear unreasonableness of the school's response. *Kollaritsch v. Michigan State Univ. Bd. of Trustees*, 944 F.3d 613, 622 (6th Cir. 2019); *see Davis v. Monroe County Board of Education*, 526 U.S. 629, 644 (1999).

Defendant does not argue this point. Instead, Defendant appears to concede that Plaintiff can show an issue of material fact as to this element. (ECF No. 56, at 12). As such, Plaintiff has shown a material issue of fact on each of the four elements of her IX deliberate indifference claim. Summary Judgment is **DENIED** as to count one.

### c. Title IX: Hostile Environment (Count Two)

"A Title IX hostile-environment claim is analogous to a Title VII hostile-environment claim." *Doe v. Miami Univ.*, 882 F.3d 579, 590 (6th Cir. 2018). A plaintiff bringing either claim "must allege that her educational experience was permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive [so as] to alter the conditions of her educational environment." *Id.* "For a plaintiff to proceed on a claim against an educational institution under Title IX, a plaintiff must establish a prima facie case showing that: 1) she was subjected to quid pro quo sexual harassment or a sexually hostile environment; b) she provided actual notice of the situation to an 'appropriate person,' who was, at a minimum, an official of the educational entity with authority to take corrective action and to end discrimination; and c) the institution's response to the harassment amounted to 'deliberate indifference.'" *Klemencic v. Ohio State Univ.*, 263 F.3d 504, 510 (6th Cir. 2001); *See Morse v. Regents of the Univ. of Colorado*, 154 F.3d 1124, 1127-28 (10th Cir. 1998).

As mentioned in this Court's March 28 opinion, Plaintiff sufficiently plead a hostile environment claim.

"According to the Complaint, Plaintiff endured daily taunting, physical prodding, name-calling, and other harassment in her classroom and throughout campus. She provided actual notice to University personnel who had power to take corrective actions, including her professor and the University's Title IX coordinator and investigators, but failed to act. She sufficiently pleads that the University's response amount to deliberate indifference."

(ECF No. 32, at 13).

However, Defendant argues Plaintiff's claim cannot survive summary judgment. "[T]here's no evidence that Plaintiff was excluded from any of the University's programs or activities." (ECF No. 56, at 13). Plaintiff, however, counters, by arguing that she was deprived of a number of educational opportunities. (ECF No. 68, at 18–19). Plaintiff points to specific educational opportunities that were deprived from her. These include class absences attributable to harassment, alienation from an "cluster" group and being compelled to finish a group project alone, and a delay in graduation. (ECF No. 68, at 18–19).

Defendant also contends Plaintiffs' "failure to avail herself of the University's offer of help precludes any finding that the University was deliberate indifferent." (ECF No. 72, at 7). Defendant is incorrect. Defendant fails to provide any citations to justify this assertion that a single refused offer of help precludes any finding of deliberate indifference, despite making it in both their Motion and their Reply. (ECF Nos 56, at 3[1] and ECF No. 72, at 7). Nor could this Court find any such proposition. Further, Plaintiff did in fact seek and accept help from Defendant. She and her father reported her ongoing harassment to the University. (ECF No. 21, at 36–37) (ECF No. 50, at 28, 40) (ECF No. 51, at 8,14).

---

[1] Here, Defendant refers to "offers of help," plural. However, throughout its motion and reply, Defendant points to only one offer, an offer from Professor Jordan.

Defendant has failed to carry their burden of production. If Plaintiff's evidence is to be believed, and all inferences are made in her favor, Plaintiff has created a genuine issue of material fact as to the whether she was subjected to a sexually hostile environment, whether she provided actual notice to an appropriate person, and whether the University was deliberately indifferent to the harassment directed at Plaintiff.

### E. Conclusion

For the reasons stated above, Defendant's Motion for Summary Judgment is **DENIED**. (ECF No. 56). Defendant's Motion for Partial Judgment on the Pleadings is **GRANTED** to the extent that Plaintiff's claims for punitive and emotional distress damages under Title IX are **EXTINGUISHED**. (ECF No. 43). Plaintiff, as described in her July 15, 2022 Notice, has declined to contest that motion. (ECF No. 45). This case is to remain open.

**IT IS SO ORDERED.**

**March 27, 2023**  /s/ Edmund A. Sargus, Jr.
**DATE** EDMUND A. SARGUS, JR.
UNITED STATES DISTRICT JUDGE